**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J&J Sports Productions, Inc., | No. CV16-01102 PHX DGC |
| Plaintiff, | **AMENDED ORDER AND DEFAULT JUDGMENT** |
| v. | |
| Anotone Fayez Youssej a/k/a Tony Youssej, et al., | |
| Defendants. | |

Plaintiff has filed a motion for default judgment. Doc. 29. The Court held a hearing on January 26, 2017, and will grant the motion.

**I.      Background.**

Plaintiff owned the exclusive nationwide commercial distribution rights to a program entitled *"The Fight of the Century": Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program.* The program aired on May 2, 2015. *Id.* Plaintiff claims that Defendants intercepted the program and displayed it to the public at Cleopatra, a bar or restaurant. Plaintiff filed suit seeking relief for Defendants' violations of the Communications Act of 1934 (47 U.S.C. § 605 *et seq.*) and the Cable and Television Consumer Protection and Competition Act of 1992 (47 U.S.C. § 553 *et seq.*). Doc. 1. Plaintiff served Defendants, who have not answered or otherwise responded to the complaint. On September 1, 2016, the Clerk entered default against Defendants. Doc. 21. Plaintiff filed the motion for default judgment. Doc. 29. No response to the motion has been filed.

**II.     The Motion for Default Judgment.**

Once a party's default has been entered, the district court has discretion to grant default judgment against that party.  *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors the court may consider in deciding whether to grant default judgment include (1) the possibility of prejudice to the plaintiff, (2) the merits of the claim, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute concerning material facts, (6) whether default was due to excusable neglect, and (7) the policy favoring a decision on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72.  In applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

**A.     Possible Prejudice to Plaintiff.**

The first *Eitel* factor weighs in favor of granting Plaintiff's motion.  Plaintiff served process on Defendants on July 13 and 14, and August 4, 2016.  Docs. 11, 12, 17. Defendants have not answered the complaint or otherwise appeared in this action.  If Plaintiff's motion for default judgment is not granted, Plaintiff "will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

**B.     The Merits of Plaintiff's Claims and the Sufficiency of the Complaint.**

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief.  *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1175.  Plaintiff seeks relief under 47 U.S.C. § 605.  "[T]o be held liable for a violation of section 605, a defendant must be shown to have (1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff." *Nat'l Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981).  Section 605 applies to satellite television signals.  *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008).  Plaintiff has alleged that Defendants willfully intercepted and displayed the licensed program on May 2, 2015.  Plaintiff's allegations

1   are supported by the affidavits of two investigators who visited Cleopatra and saw the

2   program being displayed on television screens.  Doc. 29-3.  One of these investigators

3   noted approximately 200 patrons watching the program on five television screens.  The

4   investigator also found flyers in the restaurant advertising the fight.  Plaintiff has stated a

5   claim for a willful violation of section 605.  The second and third factors favor a default

6   judgment.

7               **C.      The Amount of Money at Stake.**

8        Under the fourth *Eitel* factor, the Court considers the amount of money at stake in

9   relation to the seriousness of the defendants' conduct.  Plaintiff seeks $10,000 in statutory

10  damages and $50,000 in enhanced statutory damages.  Doc. 29 at 10.  Defendant's

11  violation was serious.  They displayed the program to some 200 patrons, advertised to

12  attract the business, and assessed a $20 cover charge.  The violation clearly appears to

13  have been willful.

14              **D.      Possible Dispute Concerning Material Facts.**

15       Given the sufficiency of the complaint and Defendant's default, "no genuine

16  dispute of material facts would preclude granting [Plaintiff's] motion."  *PepsiCo, Inc.*,

17  238 F. Supp. 2d at 1177.

18              **E.      Whether Default Was Due to Excusable Neglect.**

19       Plaintiff properly served Defendants with the summons and complaint.  Docs. 11,

20  12, 17.  It therefore is unlikely that Defendants' failure to answer and the resulting default

21  were the result of excusable neglect.  *Gemmel v. Systemhouse, Inc.*, No. CIV 04-187-

22  TUC-CKJ, 2008 WL 65604, at *5 (D. Ariz. Jan. 3, 2008).

23              **F.      The Policy Favoring a Decision on the Merits.**

24       "Cases should be decided upon their merits whenever reasonably possible."  *Eitel*,

25  782 F.2d at 1472.  But the mere existence of Rule 55(b) "indicates that this preference,

26  standing alone, is not dispositive."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (quotation

27  marks and citation omitted).  Moreover, Defendants' failure to answer or otherwise

28  respond to the complaint "makes a decision on the merits impractical, if not impossible."

1    *Id.*   The Court therefore is not precluded from entering default judgment against

2    Defendants.  *See id.*; *Gemmel*, 2008 WL 65604, at \*5.

3    **G.**    **Conclusion**

4    Six of the seven *Eitel* factors favor default judgment, and one factor is neutral.

5    The Court concludes that default judgment is appropriate.

6    **III.**    **Damages.**

7    "The general rule of law is that upon default the factual allegations of the

8    complaint, except those relating to the amount of damages, will be taken as true."

9    *Geddes*, 559 F.2d at 560.  "A default judgment may be entered without a hearing on

10    damages when the amount claimed is capable of ascertainment from definite figures

11    contained in the documentary evidence or in detailed affidavits."  *Taylor Made Golf Co.*

12    *v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. 1997).

13    Plaintiff does not seek actual damages, but rather statutory damages under 47

14    U.S.C. § 605.  Under this statute, "the party aggrieved may recover an award of statutory

15    damages for each violation of subsection (a) of this section involved in the action in a

16    sum of not less than $1,000 or more than $10,000, as the court considers just[.]"  *Id.*

17    § 605(e)(3)(C)(i)(II).  The statute further states that when a violation "was committed

18    willfully and for purposes of direct or indirect commercial advantage or private financial

19    gain, the court in its discretion may increase the award of damages, whether actual or

20    statutory, by an amount of not more than $100,000 for each violation."  *Id.*

21    § 605(e)(3)(C)(ii).  In assessing statutory damages, the Court is mindful of the need to

22    deter piracy of licensed shows, as well as the importance of not putting restaurants or bars

23    out of business for a single violation.  *See Kingvision Pay-Per-View Ltd. v. Lake Alice*

24    *Bar*, 168 F.3d 347, 350 (9th Cir. 1999)

25    Plaintiff requests $10,000 in statutory damages and $50,000 in enhanced statutory

26    damages.  The requested damages are reasonable.  Defendants pirated the program and

27    displayed it to approximately 200 patrons.  Doc. 18-3 at 8.  This was not an accidental

28    showing.   The flyer found in Defendants' restaurant shows that they deliberately

1   advertised the fight to attract patrons.  The assessed a $20 cover charge for all who
2   attended, reflecting an intent to make money off the fight.  The Court finds the requested
3   damages reasonable given this conduct.  *See Joe Hand Promotions, Inc. v. Wing Spot*
4   *Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 667-69 (E.D. Va. 2013) (awarding $4,000
5   in statutory damages and $27,000 in enhanced damages for displaying a pirated show for
6   approximately 40 patrons); *J & J Sports Prods., Inc. v. McCausland*, No. 1:10-CV-
7   01564-TWP, 2012 WL 113786, at *3-4 (S.D. Ind. Jan. 13, 2012) (awarding $10,000 in
8   statutory damages and $30,000 in enhanced damages for displaying a pirated show for
9   approximately 15 patrons).

10      **IT IS ORDERED:**

11      1.      Plaintiff's motion for default judgment (Doc. 29) is **granted**.

12      2.      Default judgment is entered in favor of Plaintiff and against Defendants
13              Antone Fayez Youssef a/k/a Tony Yousseff, d/b/a Cleopatra, and Cleopatra
14              Restaurant Incorporated, for violation of 47 U.S.C. § 605, in the amount of
15              $60,000.

16      3.      Plaintiff may file a motion for attorneys' fees within 14 days of this order.

17      Dated this 30th day of January, 2017.

_____
David G. Campbell
United States District Judge